**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ROBERT A. DOVE, | : | |
| | : | |
| Petitioner, | : | Civil Action No. 08-3215 (JAG) |
| | : | |
| v. | : | |
| | : | **O P I N I O N** |
| STATE OF NEW JERSEY, et al., | : | |
| | : | |
| Respondents. | : | |

**APPEARANCES**:

ROBERT A. DOVE, #487697B/313846
East Jersey State Prison
ACSU C-Wing, Lock Bag R
Rahway, New Jersey  07065
Petitioner Pro Se

SIMON LOUIS ROSENBACH, Assistant Prosecutor
BRUCE J. KAPLAN, MIDDLESEX COUNTY PROSECUTOR
25 Kirkpatrick Street, 3D Floor
New Brunswick, New Jersey 08903
Attorneys for Respondents

**GREENAWAY, JR.**, District Judge

Robert A. Dove ("Petitioner") filed a Petition for a Writ of Habeas Corpus, pursuant to 28

U.S.C. § 2254, challenging a judgment of conviction in the Superior Court of New Jersey,

Middlesex County, entered on July 19, 1999, and amended on May 30, 2002.  A jury found

Petitioner guilty of several crimes, including attempted murder and aggravated assault.

Respondents filed an Answer seeking dismissal of the Petition on the merits.  Although given the

opportunity to do so, Petitioner did not file a reply.  For the reasons expressed below, this Court

will dismiss the Petition, with prejudice, and deny a certificate of appealability.

# I.  BACKGROUND

On May 20, 1999, a jury in Middlesex County, New Jersey, found Petitioner guilty of two counts of attempted murder, two counts of second-degree aggravated assault, four counts of fourth-degree aggravated assault, two counts of simple assault, one count of unlawful possession of a handgun, and one count of possession of a handgun for an unlawful purpose.  On the same date, Petitioner entered a guilty plea on a separate indictment charging him with possession of a weapon by a convicted felon.  On July 19, 1999, Judge Travis L. Francis denied the state's motion to sentence Petitioner to an extended term as a persistent offender and sentenced Petitioner (on both indictments) to an aggregate 44-year term of imprisonment, with 20 years of parole ineligibility.  See State v. Dove, Docket No. A-5552-04T4 slip op., p. 2 (N.J. Super. Ct. App. Div., May 25, 2007).  Petitioner appealed.

On January 22, 2002, the Appellate Division affirmed the conviction and remanded for resentencing.  See State v. Dove, Docket No. A-355-99T4 slip op. (N.J. Super. Ct. App. Div., Jan. 22, 2002).  The New Jersey Supreme Court denied certification on June 12, 2002.  See State v. Dove, 174 N.J. 41 (2002) (table).  On May 30, 2002, the Law Division resentenced Petitioner (on both indictments) to an aggregate 42-year term of imprisonment, subject to 14 years of parole ineligibility.  The Appellate Division affirmed the sentence by order decided May 5, 2003 and filed May 12, 2003.  The record reflects that Petitioner did not file a petition for certification in the New Jersey Supreme Court.

The Appellate Division summarized the facts leading to the conviction as follows:

> The charges against defendant arose from events allegedly initiated on January 3, 1997, when he was displeased with food he was served at the Caribe Restaurant in Perth Amboy.  The State's proofs showed that an argument ensued and defendant was asked

2

> to leave by a police officer who was a regular patron of the
> restaurant.  Three days later defendant came back to the restaurant
> and claimed the owners stole $3.50 from him because the food he
> ordered was not worth the price.  Defendant refused to leave and a
> fight broke out between defendant and one of the owners.
> Defendant was ultimately ejected from the restaurant.
> Approximately fifteen to thirty minutes later defendant returned to
> the restaurant armed with a handgun.  He fired seven shots around
> the restaurant, which at the time contained several patrons in
> addition to the owners.  At one point, defendant pointed the gun at
> a patron who had failed to retreat to the back of the restaurant with
> the other patrons and owners and [defendant] pulled the trigger
> several times, although the gun failed to fire.

State v. Dove, Docket No. A-355-99T4 slip op., p. 5-6 (N.J. Super. Ct. App. Div., Jan. 22, 2002).

On June 24, 2003, Petitioner filed a pro se petition for post-conviction relief raising claims of ineffective assistance of counsel, admission of Petitioner's statement in violation of Miranda, and illegal sentence.  Assigned counsel thereafter filed a brief raising ineffective assistance of counsel and cumulative errors, as well as Petitioner's affidavit, several psychological evaluations, and a competency evaluation.  On May 13, 2005, the Law Division denied post-conviction relief after conducting an evidentiary hearing, at which Petitioner testified.  Petitioner appealed.  On May 25, 2007, the Appellate Division affirmed.  Id.  On September 20, 2007, the New Jersey Supreme Court denied certification.  See State v. Dove, 192 N.J. 481 (2007) (table).

Petitioner forwarded his § 2254 Petition to the Clerk of the Court by cover letter dated June 22, 2008; the Clerk received and filed it on June 26, 2008.  On July 9, 2008, the Clerk received and filed Petitioner's Brief and Appendix.  The Petition, supplemented by the Brief, raises the following grounds[1]:

---

[1] As some grounds and subparts were misnumbered, this Court has combined and
(continued...)

3

Ground One: DEFENDANT, ROBERT DOVE, WAS DENIED
EFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHICH
DENIED HIM DUE PROCESS OF LAW AND THE RIGHT TO
A FAIR TRIAL IN VIOLATION OF. . . U.S. CONST. AMENDS.
V, VI, XIV.

A.  FAILURE TO CHALLENGE AN IMPROPER
GRAND JURY PROCEEDING

B. FAILURE TO REQUEST A COMPETENCY
HEARING

C.  FAILURE TO PERMIT DEFENDANT ROBERT
DOVE TO TESTIFY

D.  FAILURE TO SUBPOENA VITAL WITNESS
CARMEN SANTANA

E. FAILURE TO CHALLENGE THE ATTEMPTED
MURDER INSTRUCTION

F.  FAILURE TO OBJECT TO THE STATE'S
VIOLATION OF THE COURT'S MIRANDA RULING

Ground Two:  DEFENDANT WAS DEPRIVED OF A FAIR
TRIAL BECAUSE HE WAS TRIED AND SENTENCED WHILE
INCOMPETENT . . . .  DEFENDANT, ROBERT DOVE,
SHOULD HAVE BEEN GIVEN A COMPETENCY HEARING,
SUA SPONTE, FOR THERE EXISTS A BONA FIDE DOUBT
AS TO HIS COMPETENCY TO STAND TRIAL IN VIOLATION
OF . . . U.S. CONST. AMENDS. V, VI, XIV.

Ground Three: DID THE TRIAL COURT COMMIT A
REVERSIBLE ERROR [BY] IMPROPERLY PERMITT[ING]
EVIDENCE OF DEFENDANT'S STATEMENTS TO BE
PRESENTED TO THE JURY IN CLEAR VIOLATION OF ITS
MIRANDA RULING WHICH DEPRIVED DEFENDANT OF
DUE PROCESS OF LAW AND THE RIGHT TO A FAIR
TRIAL? . . . U.S. CONST. AMENDS. V, VI, XIV.

---

[1](...continued)
renumbered certain grounds and subparts.  However, the substance of Petitioner's papers remains
the same.

> Ground Four:   THE TRIAL COURT'S INSTRUCTION ON
> ATTEMPTED MURDER, AND FAILURE TO PROPERLY
> INSTRUCT ON THE STATE'S BURDEN OF PROVING
> ELEMENTS OF [THE] OFFENSE, CONSTITUTES A
> VIOLATION OF DEFENDANT'S RIGHT TO DUE PROCESS
> OF LAW AND A FAIR TRIAL
>
> Ground Five:   THE TRIAL COURT ERRED IN OVERRULING
> DEFENDANT'S OBJECTION TO ANA NUNEZ'S IN COURT
> IDENTIFICATION OF DEFENDANT

(Pet., Grounds One-Four & Brief, Legal Argument.)

Respondents filed an Answer and a copy of the state court record.  In the Answer, Respondents argued that the Petition should be denied on the merits.  Although given an opportunity to do so, Petitioner did not file a reply to the Answer.

## II.  STANDARD OF REVIEW

A habeas corpus petition must meet "heightened pleading requirements."  McFarland v. Scott, 512 U.S. 849, 856 (1994) (citing 28 U.S.C. § 2254 Rule 2(c)).  The petition must specify all the grounds for relief available to the petitioner, state the facts supporting each ground, and state the relief requested.  See 28 U.S.C. § 2254 Rule 2(c)(1), (c)(2), (c)(3).

Section 2254(a) of Title 28 of the United States Code gives the court jurisdiction to entertain a habeas petition challenging a state conviction or sentence only where the inmate's custody violates federal law:

> [A] district court shall entertain an application for a writ of habeas
> corpus in behalf of a person in custody pursuant to the judgment of
> a State court only on the ground that he is in custody in violation of
> the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); 28 U.S.C. § 2254(a); accord Barry v. Bergen County Probation Dept., 128 F.3d 152, 159 (3d Cir. 1997). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Smith v. Phillips, 455 U.S. 209, 221 (1982). "If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable." Engle v. Isaac, 456 U.S. 107, 120 n.19 (1982). Moreover, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." Bradshaw v. Richey, 546 U.S. 74, 76 (2005).

In reviewing a § 2254 petition, a federal court is not permitted to address a federal constitutional claim pertinent to the facts of the case unless the petitioner asserts the claim as a ground for relief.[2]  In addition, a court may not recharacterize a ground asserted under state law into a federal constitutional claim.[3]  "[E]rrors of state law cannot be repackaged as federal errors

---

[2] See, e.g., Withrow v. Williams, 507 U.S. 680, 695-96 (1993) (where habeas petition raised claim that the police had elicited petitioner's statements without satisfying Miranda, the district court erred when it "went beyond the habeas petition and found the statements [petitioner] made after receiving the Miranda warnings to be involuntary under due process criteria"); Baker v. Barbo, 177 F.3d 149, 156 n.7 (3d Cir. 1999) (where petition contains ground asserting the ineffective assistance of counsel during plea negotiations and trial, court is not permitted to  consider ground, evident from the facts but not raised in the petition, that appellate counsel was ineffective by failing to advise petitioner that he faced a longer sentence by appealing the conviction).

[3] See Engle, 456 U.S. at 119-20 & n.19 (insofar as petitioners simply challenged the correctness of the self-defense instructions under state law, their petitions alleged no deprivation of federal rights and § 2254 was inapplicable); Kontakis v. Beyer, 19 F.3d 110, 116-17 & n.10 (3d Cir. 1994) (where petitioner asserted in § 2254 petition that the exclusion of testimony violated his rights under state law, federal court may not consider ground, not set forth in the

(continued...)

simply by citing the Due Process Clause." Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997).  Moreover, "it is well established that a state court's misapplication of its own law does not generally raise a constitutional claim."  Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997) (citations and internal quotation marks omitted); see also Smith v. Zimmerman, 768 F.2d 69, 71, 73 (3d Cir. 1985).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), limits a federal court's authority to grant habeas relief when a state court has adjudicated petitioner's federal claim on the merits.  See 28 U.S.C. § 2254(d).  Where a federal claim was "adjudicated on the merits" in state court proceedings, the writ must be denied unless adjudication of the claim either involved an unreasonable application of clearly established federal law, or was based on unreasonable determination of the facts in light of the evidence before the state court.  See 28 U.S.C. § 2254(d).  Specifically, § 2254(d) provides:

> (d) An application for a writ of habeas corpus . . . shall not be granted with respect to any claim that was adjudicated on the merits in State Court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

---

[3](...continued)
petition, that exclusion of the testimony violated his federal due process rights).

7

The unreasonableness standards of § 2254(d) govern only claims that were "adjudicated on the merits in State Court proceedings."  28 U.S.C. § 2254(d).  "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground."  Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004) (citations and internal quotation marks omitted), reversed on other grounds sub nom. Rompilla v. Beard, 545 U.S. 374 (2005); see also Rolan v. Vaughn, 445 F.3d 671, 678 (3d Cir. 2006).  A state court may render an adjudication on the merits of a federal claim by rejecting the claim without any discussion whatsoever.  See Rompilla, 355 F.3d at 247.  On the other hand, "[i]f the petitioner's legal claims were presented but not addressed by the state courts, 28 U.S.C. § 2254(d) does not apply, and federal courts undertake a de novo review of the claim."  Rolan, 445 F.3d at 678.

As the New Jersey courts adjudicated Petitioner's claims on the merits, this Court may not grant relief unless either § 2254(d)(1) or § 2254(d)(2) is satisfied.  See 28 U.S.C. § 2254(d). Accordingly, this Court may not grant habeas relief to Petitioner unless the adjudication of a federal claim by the New Jersey courts involved an unreasonable application of clearly established Supreme Court law, see 28 U.S.C. § 2254(d)(1), or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding and petitioner is in custody in violation of the Constitution or laws or treaties of the United States, see 28 U.S.C. §§ 2254(a), (d)(2).

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court.  See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's]

decisions as of the time of the relevant state-court decision."  Williams, 529 U.S. at 412; see also Carey v. Musladin, 549 U.S. 70, 74 (2006) ("federal habeas relief may be granted here if the California Court of Appeal's decision was contrary to or involved an unreasonable application of this Court's applicable holdings").  A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Lockyer v. Andrade, 538 U.S. 63, 71, 72 (2003).

A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.  For example, in Carey v. Musladin, the court reversed the granting of a writ, holding that where "[n]o holding of this Court required the California Court of Appeals to apply the test of Williams and Flynn to the spectators' conduct . . . , the state court's decision was not contrary to or an unreasonable application of clearly established federal law." Carey, 549 U.S. at 77.[4]

----

[4] See also Wright v. Van Patten, 552 U.S. 120, 126 (2008) ("Because our cases give no clear answer to the question presented, let alone one in [petitioner's] favor, it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law") (citation and internal quotation marks omitted).

In addition, whether a state court's application of federal law is "unreasonable" must be judged objectively; an application may be incorrect, but still not unreasonable.[5] Id. at 409-10; see also Thomas v. Varner, 428 F. 3d 491, 497 (3d Cir. 2005). "[T]his Court has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." See Knowles v. Mirzayance, 129 S. Ct. 1411, 1419 (2009) (citing Wright v. Van Patten, 552 U.S. at 125-26).

## III.  DISCUSSION

A.  Competency Hearing

Petitioner asserts in Ground Two that the trial court's failure to sua sponte conduct a competency hearing violated his due process rights.  Petitioner, who raised this ground in his pro se supplemental brief on direct appeal, argues:

> Both during the initial exchange between the judge and defendant Robert Dove, and as the trial proceeded, defendant's demeanor and behavior raised a bona fide doubt as to his competence to stand trial and the Court should have ordered a competency hearing . . . . There exists a genuine question as to defendant's competence considering his history of harboring a mental defect, lifelong treatment for mental disorders, sporadic residence in Forensic Mental Institutions, Hospitalization, all pre-dating the instant matter, as well as defendant's overt struggle to manage an understanding of Court proceedings . . .
>
> The proof presented to the Court compose the requisite indicia of incompetence to have called upon the Court to act sua sponte. Defendant Robert Dove's history of mental illness, repeated

---

[5] "[D]ecisions of federal courts below the level of the United States Supreme Court may be helpful to [a court] in ascertaining the reasonableness of state courts' application of clearly established United States Supreme Court precedent, as well as helpful amplifications of that precedent."  Marshall v. Hendricks, 307 F.3d 36, 71 n.24 (3d Cir. 2002) (citations and internal quotation marks omitted).

> instances of Hospitalization, internment in Forensic Hospitals,
> bizarre behavior during arrest and transport coupled with his
> conduct whilst in Court in the present matter and expressed threats
> to counsel[] (rounded by apologies) connotes the Court's ongoing
> responsibility to prevent the trial of an incompetent person . . . .  In
> the instant case the record delineates abundant medical and other
> evidence on the issue . . . .

State v. Dove, Docket No. A-355-99T4 pro se supplemental brief, pp. 27-28 (N.J. Super. Ct.

App. Div., Mar. 26, 2001).

The Government contends that, although defense counsel obtained three psychological

evaluations, and a staff psychiatrist at the Forensic Hospital [6] found Petitioner competent to stand

trial (after performing a court-ordered competency evaluation), none of these evaluations found

that Petitioner was not competent to stand trial.  Accordingly, the Government argues that

Petitioner's due process rights were not violated by the trial court's failure to sua sponte order a

competency hearing.

The conviction of an incompetent defendant, as a result of trial or guilty plea, violates due

process and warrants reversal of the conviction.  See Indiana v. Edwards, 128 S. Ct. 2379, 2383

(2008); Cooper v. Oklahoma, 517 U.S. 348, 354 (1996); Godinez v. Moran, 509 U.S. 389, 397-

99 (1993); Pate v. Robinson, 383 U.S. 375, 385-86 (1966).  "Dusky defines the competency

standard as including both (1) whether the defendant has a rational as well as factual

understanding of the proceedings against him and (2) whether the defendant has sufficient

present ability *to consult with his lawyer* with a reasonable degree of rational understanding."

---

[6] Ann Klein Forensic Center is a state psychiatric hospital serving mental health patients
who are involved in the legal system and require a secure environment.  See State of New Jersey,
Dept. of Human Services, State Hospital Services, Div. of Mental Health Services,
http://www.state.nj.us/humanservices/involved/nurses/mentalhph/annklein.html (last accessed
Jan. 20, 2010).

Edwards, 128 S. Ct. at 2383 (quoting Dusky v. United States, 362 U.S. 402, 402 (1960) (per curiam)) (emphasis in Edwards; internal quotation marks omitted); accord Drope v. Missouri, 420 U.S. 162, 171 (1975) ("[A] person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel and to assist in preparing his defense may not be subjected to a trial").  Due process requires the trial court to inquire sua sponte as to the defendant's competence when the court has reason to doubt the defendant's competency.  See Drope v. Missouri, 420 U.S. 162, 180-81 (1975); Taylor v. Horn, 504 F. 3d 416, 433 (3d Cir. 2007).  "But barring indicia of incompetence, due process does not require that a competency hearing be held."  Taylor, 504 F. 3d at 433 (citing Godinez, 509 U.S. at 402 n.13).

As the Supreme Court explained,

> evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but that even one of these factors standing alone may, in some circumstances, be sufficient.  There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated.  That they are difficult to evaluate is suggested by the varying opinions trained psychiatrists can entertain on the same facts . . . .

> Even when a defendant is competent at the commencement of his trial, a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial.  Whatever the relationship between mental illness and incompetence to stand trial, in this case the bearing of the former on the latter was sufficiently likely that, in light of the evidence of petitioner's behavior including his suicide attempt, and there being no opportunity without his presence to evaluate that bearing in fact, the correct course was to suspend the trial until such an evaluation could be made.  That this

12

might have aborted the trial is a hard reality, but we cannot fail to
note that such a result might have been avoided by prompt
psychiatric examination before trial, when it was sought by
petitioner.

Drope, 420 U.S. at 180, 181-82 (footnote omitted).

Petitioner presented this claim on direct appeal in his pro se supplemental brief.  The

Appellate Division rejected the claim on the merits without discussion.  The record shows that on

November 16, 1998, Petitioner was admitted to the Forensic Psychiatric Hospital as per the trial

judge's order that Petitioner undergo an evaluation for the purpose of competency, pursuant to N.

J. Stat. Ann. § 2C:4-5.[7]  The report produced as a result of the admission and evaluation states:

Petitioner had no prior psychiatric hospitalizations; Petitioner reported experiencing

hallucinations while he was in administrative segregation at the jail for allegedly assaulting a

corrections officer, but denied auditory and visual hallucinations during his hospitalization;

Petitioner was oriented to person, place and time; memory for recent and remote events was

good; and Petitioner was willingly taking Depakote and Trilafon medications.  (Forensic

---

[7] The statute provides:

(a) Whenever there is reason to doubt the defendant's fitness to proceed, the court
may . . . on its own motion, appoint at least one qualified psychiatrist or licensed
psychologist to examine and report upon the mental condition of the defendant . . .

(b) The report of the examination shall include at least the following: (1) a
description of the nature of the examination; (2) a diagnosis of the mental
condition of the defendant; (3) an opinion as to the defendant's capacity to
understand the proceedings against him and to assist in his own defense.  The
person or persons conducting the examination may ask questions respecting the
crime charged when such questions are necessary to enable formation of an
opinion as to a relevant issue, however, the evidentiary character of any
inculpatory statement shall be limited expressly to the question of competency and
shall not be admissible on the issue of guilt.

N.J. Stat. Ann. §§ 2C:4-5(a), (b).

Psychiatric Hospital Court Report, Competency to Stand Trial Evaluation of Robert Dove, by

Manolo V. Mempin, M.D., Staff Psychiatrist, dated Dec. 11, 1998; Docket entry

#10-22, pp. 55-56.)

The sections entitled "COMPETENCY EVALUATION" and "RECOMMENDATION"

provide:

> COMPETENCY EVALUATION: The patient was seen by the
> undersigned during rounds, approximately twice a week [for four
> weeks].  He was seen on two separate occasions, approximately 30
> to 40 minutes each time for the purpose of this evaluation.  His
> clinical records were reviewed, as well as his discovery package.
> He was evaluated utilizing all the factors outlined in N.J.S.A.
> 2C:4-5 [sic].  He is alert and oriented to person, place and time.
> He was somewhat guarded and is generally relevant and coherent.
> There were no overt psychotic symptoms manifested.  He was able
> to give adequate definitions to legal terminologies . . . He defined
> the defense lawyer as "the person who is supposed to help defend
> you in the court."  He added that he already has had five lawyers
> upon his request.  He is having difficulty with legal strategies
> proposed for him.  He is bound on going to court and take [sic] his
> charges to trial.  His only wish is for a lawyer who would see his
> point of view.  He defined plea bargaining as "an offer to get lesser
> time for admission of guilt." He defined the jury as "a group of
> people who . . . makes [sic] a decision of guilty or not guilty."  He
> understands that he has several charges, 26 in total, minus the two
> charges that ha[ve] been crossed out.  He further stated that most of
> them were made up because he assaulted an officer.  At this point,
> the patient has the capacity to work with a lawyer in the defense of
> his case.  He stated that it is also his right to disagree with
> strategies that are proposed for him.  He has the capacity to relate
> with a lawyer in the preparation and presentation of his case.  It is
> therefore my medical opinion, based on a reasonable medical
> certainty, that the patient is currently competent to stand trial.
>
> RECOMMENDATION: As we have complied with the court
> order, the patient can be discharged back to the Middlesex County
> Jail.  It is highly recommended that the patient continue to take the
> above medications.

(Id. at pp. 2-3.)

In addition, two of Petitioner's defense attorneys obtained forensic evaluation reports from licensed psychologists which are dated January 8, 1998, May 18, 1998, and October 24, 1998. In the first two evaluations, two different licensed psychologists found Petitioner competent to stand trial. (Docket entry #10-22, pp. 32, 47.) The third evaluation, which was performed on October 23, 1998, on an emergency basis, while Petitioner was in administrative segregation for assaulting a corrections officer, and after he had reported experiencing visual and auditory hallucinations, concluded that "the diagnostic impression of Schizophrenia, Paranoid Type, Dysthymic Disorder, and Borderline Personality Disorder is seen as being appropriate." (Id. at p. 34.) The evaluator recommended "immediate hospitalization for further extended evaluation and stabilization on medication." (Id.) Although it is not clear that the trial court received copies of these reports, or relied on them, the trial court shortly thereafter ordered Petitioner's transfer to the Forensic Hospital for a competency evaluation. See Taylor, 504 F.3d at 434. Moreover, the trial court was obviously aware of the competency evaluation report and knew that defense counsel had not requested a competency hearing. In addition, the trial court judge had the benefit of his own observations and interactions with Petitioner throughout the proceeding, and the record shows that Petitioner was able to respond to the trial court's inquiries.

While the record submitted to this Court does not indicate that the trial judge made a ruling regarding the need for a competency hearing, in light of the record, this Court cannot find that the failure to conduct a competency hearing was contrary to, or an unreasonable application of Supreme Court precedent. See Taylor, 504 F. 3d at 435 (holding in § 2254 case that state court's failure to sua sponte conduct a competency hearing did not warrant habeas relief where

15

one expert had concluded Taylor was competent, and the record did not otherwise reveal sufficient indicia of incompetency).

Petitioner is not entitled to habeas relief based on a due process violation.

## B.  Miranda Violation

Petitioner asserts in Ground Three that the admission of Detective Puccio's testimony that, at the time of apprehension, Petitioner offered to show Puccio and two other officers the location of the gun, violated Miranda and the trial court's suppression of Petitioner's subsequent statement at the police station.  The Government argues that the trial court's decision to suppress Petitioner's station-house statement did not include the words Petitioner allegedly spoke at the time of apprehension, and that the statement to Puccio was in any event admissible under the public safety exception to Miranda.  Petitioner raised this claim on direct appeal in his pro se supplemental brief and the Appellate Division rejected it on the merits without comment.

The record shows that, after conducting a suppression hearing which included testimony from Detective Kenny and Petitioner, the trial judge suppressed the statement Petitioner made to Kenny after Petitioner had been transported to the Perth Amboy Police Headquarters on the night of the incident.  The trial judge suppressed the statement on the ground that Petitioner had invoked his right to remain silent when he refused to sign the Miranda card.  In accordance with this ruling, Kenny did not testify, at trial, regarding Petitioner's station-house statement.

Based on this ruling, Petitioner now challenges the admission of his statement, at the time of apprehension, telling the officers that he would show them where the gun was.  This statement was presented through the trial testimony of Detective Puccio, who was one of three officers who apprehended Petitioner.

16

Detective Puccio testified on direct examination that on the night of the crime, he (Puccio) was off duty in the downtown area of Perth Amboy when he heard a radio transmission indicating that gun shots had been fired at a restaurant by a black male wearing camouflage. As he was driving down Division Street, he saw Petitioner, who was wearing a camouflage field jacket and brown pants. He stopped his vehicle, got out, and confronted Petitioner, who then ran around to the other side of a tractor, which was parked directly under a street light.

Puccio then testified as follows:

Q. What did you do at that point?

A. At that point, I ran next to the tractor and made my way around the tractor using the tractor as cover . . . . I came up along the street this way and Mr. Dove was here kneeling on the ground with his back to me . . . . I came around the vehicle. I told him to stop. At that point he got up and he ran south on Division Street . . . .

Q. And what did you do? Did you chase him?

A. I chased after him.

Q. And how far did he run?

A. Probably about 50 to 70 feet.

Q. Were you able to catch him?

A. No. At that time Lieutenant Fuller was coming this way and Officer McDonald . . . .

Q. And what happened then?

A. He ran right into me . . . . At that point I was still chasing him and they were struggling with him when they got the handcuffs on him. I started to walk back to the location where I saw him kneeled over with his hands in the grass.

Q. And why did you go back there?

A. To see if there was anything that he put in the grass.

17

Q.  And did Mr. Dove say anything to you at that time?

A.  On the way back **he stated he would show them where the gun was**.

Q.  And did he show them where the gun was?

A.  Well, I was in the same spot here where his hands were when he came back and I found the gun at the same time that he pointed out where the gun was.

              *                      *                      *

Q.  Please, would you go back to your seat there.  Did you pick the gun up?

A.  Yes.

Q.  And what did you do with the gun after you picked it up . . .?

A.  Well, I made it safe.  I took the clip out and I unloaded the gun.

State v. Dove, Indictment Nos. 970-4-488 and 97-04-480 transcript, pp. 13:8 to 15:14 (N.J. Super. Ct. Law Div., May 12, 1999) (emphasis added).

Petitioner argues that his offer to show the police the location of the gun was admitted (1) contrary to the trial court's decision to quash the statement Petitioner made at the police station, and (2) in violation of Miranda.  As to the first point, the Government correctly contends that the statement Petitioner made to the officers at the time of apprehension was not part of the trial court's Miranda ruling.  As to the second point, the Government is also correct that the statement was admissible under New York v. Quarles, 467 U.S. 649 (1984).

The Fifth Amendment provides, in part, that no person "shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  The Fourteenth Amendment incorporates the Fifth Amendment privilege against self-incrimination.  See Malloy v. Hogan, 378 U.S. 1, 8 (1964).  In Miranda v. Arizona, 384 U.S. 436 (1966), the Court held that "without proper safeguards the process of in-custody interrogation . . . contains inherently

18

compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." 384 U.S. at 467.  When police ask questions of a suspect in custody without administering the required warnings, Miranda dictates that the answers received be presumed compelled and that they be excluded from evidence at trial in the State's case in chief.  See Oregon v. Elstad, 470 U.S. 298, 317 (1985).  Thus, a confession taken during a custodial interrogation without the provision of Miranda warnings violates the privilege against self incrimination.  See Thompson v. Keohane, 516 U.S. 99 (1995).

"To safeguard the uncounseled individual's Fifth Amendment privilege against self-incrimination, the Miranda Court held, suspects interrogated while in police custody must be told that they have a right to remain silent, that anything they say may be used against them in court, and that they are entitled to the presence of an attorney, either retained or appointed, at the interrogation." Thompson, 516 U.S. at 107; see also Miranda, 384 U.S. at 479.  The Miranda Court outlined the procedures to be followed after the police provide these warnings.  If the accused requests counsel, then "the interrogation must cease until an attorney is present." Miranda, 384 U.S. at 474.

In Quarles, the defendant - Quarles - was charged with criminal possession of a weapon. The facts are as follows:

> Officer Frank Kraft and Officer Sal Scarring were on road patrol in Queens, N.Y., when a young woman approached their car. She told them that she had just been raped by a black male, approximately six feet tall, who was wearing a black jacket with the name "Big Ben" printed in yellow letters on the back. She told the officers that the man had just entered an A & P supermarket located nearby and that the man was carrying a gun.
>
> The officers drove the woman to the supermarket, and Officer Kraft entered the store while Officer Scarring radioed for

assistance. Officer Kraft quickly spotted respondent, who matched the description given by the woman, approaching a checkout counter. Apparently upon seeing the officer, respondent turned and ran toward the rear of the store, and Officer Kraft pursued him with a drawn gun. When respondent turned the corner at the end of an aisle, Officer Kraft lost sight of him for several seconds, and upon regaining sight of respondent, ordered him to stop and put his hands over his head.

Although more than three other officers had arrived on the scene by that time, Officer Kraft was the first to reach respondent. He frisked him and discovered that he was wearing a shoulder holster which was then empty. After handcuffing him, Officer Kraft asked him where the gun was. Respondent nodded in the direction of some empty cartons and responded, "the gun is over there." Officer Kraft thereafter retrieved a loaded .38-caliber revolver from one of the cartons, formally placed respondent under arrest, and read him his Miranda rights from a printed card. Respondent indicated that he would be willing to answer questions without an attorney present. Officer Kraft then asked respondent if he owned the gun and where he had purchased it. Respondent answered that he did own it and that he had purchased it in Miami, Fla.

In the subsequent prosecution of respondent for criminal possession of a weapon, the judge excluded the statement, "the gun is over there," and the gun because the officer had not given respondent the warnings required by our decision in Miranda v. Arizona . . . , before asking him where the gun was located. The judge excluded the other statements about respondent's ownership of the gun and the place of purchase, as evidence tainted by the prior Miranda violation. The Appellate Division of the Supreme Court of New York affirmed without opinion.

Quarles, 467 U.S. at 651-53 (footnotes omitted).

Although Quarles "was surrounded by at least four police officers and was handcuffed when the questioning at issue took place," 467 U.S. at 655, the Supreme Court reversed the decision of the New York courts. The Court explained:

The police in this case, in the very act of apprehending a suspect, were confronted with the immediate necessity of ascertaining the whereabouts of a gun which they had every reason to believe the

20

suspect had just removed from his empty holster and discarded in the supermarket. So long as the gun was concealed somewhere in the supermarket, with its actual whereabouts unknown, it obviously posed more than one danger to the public safety: an accomplice might make use of it, a customer or employee might later come upon it.

In such a situation, if the police are required to recite the familiar Miranda warnings before asking the whereabouts of the gun, suspects in Quarles' position might well be deterred from responding. Procedural safeguards which deter a suspect from responding were deemed acceptable in Miranda in order to protect the Fifth Amendment privilege; when the primary social cost of those added protections is the possibility of fewer convictions, the Miranda majority was willing to bear that cost. Here, had Miranda warnings deterred Quarles from responding to Officer Kraft's question about the whereabouts of the gun, the cost would have been something more than merely the failure to obtain evidence useful in convicting Quarles. Officer Kraft needed an answer to his question not simply to make his case against Quarles but to insure that further danger to the public did not result from the concealment of the gun in a public area.

We conclude that the need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination. We decline to place officers such as Officer Kraft in the untenable position of having to consider, often in a matter of seconds, whether it best serves society for them to ask the necessary questions without the Miranda warnings and render whatever probative evidence they uncover inadmissible, or for them to give the warnings in order to preserve the admissibility of evidence they might uncover but possibly damage or destroy their ability to obtain that evidence and neutralize the volatile situation confronting them.

Quarles 467 U.S. at 657-58 (footnote omitted).  See also United States v. Duncan, 2009 WL 215353 at *8 (3d Cir.  Jan. 30, 2009) (Quarles' central holding [is] that the Miranda warnings are not required in the face of an objectively reasonable need to protect the police or the public from any immediate danger associated with a weapon") (Chagares, J., concurring).

As Petitioner cites no Supreme Court precedent contrary to the holding of Quarles, this Court finds that the New Jersey courts' rejection of Petitioner's Miranda claim is not contrary to, or an unreasonable application of, Supreme Court precedent, and Petitioner is therefore not entitled to habeas relief on this ground.

## C.  Instructions

Petitioner argues in Ground Four that the trial court's instruction on attempted murder, and on the burden of proof, violated due process.  Petitioner's brief elaborates on this claim for 15 pages, but the contours of the claim are unclear and confusing.  While Petitioner asserts that the instructions shifted the burden of proof to the defendant, confused the jury, and presumed intent, the instructions which he cites neither shift the burden of proof nor presume intent.  Rather, as the Government contends, the trial court repeatedly placed the burden on the state to prove each element of each charge beyond a reasonable doubt.  Although Petitioner presented this claim on direct appeal in his pro se supplemental brief, the Appellate Division rejected it without discussion and the Supreme Court of New Jersey denied certification.

In 1970, the Supreme Court held "that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [one] is charged."  In re Winship, 397 U.S. 358, 364 (1970).  Winship's rationale requires that the jury be instructed on the necessity of proof beyond a reasonable doubt.  See Cool v. United States, 409 U.S. 100, 104 (1972).  A jury instruction that "reduce[s] the level of proof necessary for the Government to carry its burden . . . is plainly inconsistent with the constitutionally rooted presumption of innocence."  Id.  "[T]rial courts must avoid defining reasonable doubt so as to lead the jury to convict on a lesser showing than due

process requires." <u>Victor v. Nebraska</u>, 511 U.S. 1, 22 (1994); <u>see also</u> <u>Cage v. Louisiana</u>, 498

U.S. 39, 41 (1990 ) (per curiam).  As the Supreme Court explained in <u>Victor</u>,

> so long as the court instructs the jury on the necessity that the
> defendant's guilt be proved beyond a reasonable doubt, the
> Constitution does not require that any particular form of words be
> used in advising the jury of the government's burden of proof.
> Rather, taken as a whole, the instructions [must] correctly conve[y]
> the concept of reasonable doubt to the jury.

<u>Victor</u>, 511 U.S. at 6  (citations and internal quotation marks omitted); <u>see also</u> <u>Cupp v.</u>

<u>Naughten</u>, 414 U.S. 141, 146-47 (1973) ("[A] single instruction to a jury may not be judged in

artificial isolation, but must be viewed in the context of the overall charge") .

The proper inquiry is not whether the instruction "'could have' been applied in an

unconstitutional manner, but whether there is a reasonable likelihood that the jury *did* so apply

it." <u>Victor</u>, 511 U.S. at 6 (quoting <u>Estelle v. McGuire</u>, 502 U.S. 62, 72 and n.4 (1991)).  The

constitutional question is "whether there is a reasonable likelihood that the jury understood the

instructions to allow conviction based on proof insufficient to meet the <u>Winship</u> standard."

<u>Victor</u>, 511 U.S. at 6.

As the Supreme Court recently explained,

> Even if there is some ambiguity, inconsistency, or deficiency in the
> instruction, such an error does not necessarily constitute a due
> process violation.  Rather, the defendant must show both that the
> instruction was ambiguous and that there was " 'a reasonable
> likelihood' " that the jury applied the instruction in a way that
> relieved the State of its burden of proving every element of the
> crime beyond a reasonable doubt. <u>Estelle</u>, <u>supra</u>, at 72, 112 S.Ct.
> 475 (quoting <u>Boyde v. California</u>, 494 U.S. 370, 380 . . . (1990)).
> In making this determination, the jury instruction "may not be
> judged in artificial isolation,' but must be considered in the context
> of the instructions as a whole and the trial record." <u>Estelle</u>, <u>supra</u>,
> at 72. Because it is not enough that there is some "slight
> possibility" that the jury misapplied the instruction, <u>Weeks v.</u>

23

> Angelone, 528 U.S. 225, 236, 120 S.Ct. 727, 145 L.Ed.2d 727
> (2000), the pertinent question "is 'whether the ailing instruction by
> itself so infected the entire trial that the resulting conviction
> violates due process,' " Estelle, supra, at 72, 112 S.Ct. 475
> (quoting Cupp, supra, at 147, 94 S.Ct. 396).

Waddington v. Sarausad, 129 S.Ct. 823, 831-832 (2009) (citations and internal quotation marks

omitted).

This Court has reviewed the instructions and finds that "the instruction[s] as given w[ere]

not of the type that could mislead the jury into finding no reasonable doubt when in fact there

was some." Holland v. United States, 348 U.S. 121, 140 (1954). The New Jersey courts'

rejection of this claim was not contrary to, or an unreasonable application of, clearly established

constitutional law, as determined by the Supreme Court. Petitioner is therefore not entitled to

habeas relief on this ground.

D.  Identification

Petitioner asserts in Ground Five that the trial court erred in overruling his objection to

Ana Nunez's in-court identification of him. As factual support, Petitioner maintains that the in-

court identification was tainted by the impermissibly suggestive out-of-court identification

conducted three days after the incident, which the trial court determined was inadmissible.

This Court lacks jurisdiction over this claim, as Petitioner does not assert in Ground five,

or his accompanying brief, that admission of the in-court identification violates the Constitution

of the United States. Further, to the extent Petitioner does raise a due process claim, Petitioner is

not entitled to habeas relief.

The Supreme Court has observed that improper pretrial identification procedures by

police may cause witnesses to misidentify a criminal. See Simmons v. United States, 390 U.S.

377, 383 (1968).  In that case, "the witness thereafter is apt to retain in his memory the image of the [misidentification] rather than that of the person actually seen, reducing the trustworthiness of subsequent lineup or courtroom identification."  Id. at 383-84.  As the Supreme Court noted, "[it] is, first of all, apparent that the primary evil to be avoided is a very substantial likelihood of irreparable misidentification."  Simmons, 390 U.S. at 384.  "It is the likelihood of misidentification which violates a defendant's right to due process . . . .  Suggestive confrontations are disapproved because they increase the likelihood of misidentification."  Neil v. Biggers, 409 U.S. 188, 198 (1972).  But the Supreme Court has ruled that a suggestive identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability, Manson v. Brathwaite, 432 U.S. 98, 106 (1977), for reliability is the "linchpin in determining the admissibility of identification testimony," id. at 114; see also United States v. Wise, 515 F. 3d 207, 215 (3d Cir. 2008).

The central question is "'whether under the totality of the circumstances the identification was reliable even though the confrontation procedure was suggestive."  Brathwaite, 432 U.S. at 106 (quoting Biggers, 409 U.S. at 199); see also United States v. Maloney, 513 F. 3d 350, 355 (3d Cir. 2008).

Factors to be considered in evaluating the likelihood of misidentification include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."  Biggers, 409 U.S. at 199.  Significantly, where "identifications were entirely based upon observations at the time of the [incident] and not at all induced by the conduct" of the

25

pretrial identification procedures, the identification does not violate due process.  See Coleman v. Alabama, 399 U.S. 1, 7 (1970).

In this case, Petitioner argues that the in-court identification of Petitioner by co-owner, Ana Nunez, was tainted by an impermissibly suggestive photo identification.  Although the trial court excluded the out-of-court photo identification as impermissibly suggestive, the trial judge ruled that the in-court identification was not unduly tainted, and the Appellate Division affirmed this ruling on direct appeal:

> One witness who identified defendant at trial as the perpetrator was Ana Nunez, a co-owner of the Caribe Restaurant.  The trial court previously ruled that an out-of-court identification she made of defendant based upon a single photograph shown to her at the police station was inadmissible because the identification procedure was improperly suggestive.  Nevertheless, the court was satisfied that Nunez otherwise had ample opportunity to observe defendant during the course of the events in question and no taint resulted from the one-picture show up.  The record amply supports the trial court's determination . . . .  Moreover, the defense in this matter was not so much misidentification as it was an attempt to explain away defendant's conduct.

State v. Dove, Docket No. A-355-99T4 slip op., pp. 5-6.

The New Jersey courts' ruling that the in-court identification by Nunez was admissible was not contrary to, or an unreasonable application of the factors which the Supreme Court requires to be considered in evaluating the likelihood of misidentification.  See Biggers, 409 U.S. at 199.  Under these circumstances, the adjudication of Petitioner's identification claim was not contrary to, or an unreasonable application of, Biggers and other applicable Supreme Court jurisprudence.  Petitioner is not entitled to habeas relief on this claim.

26

E.  Ineffective Assistance

In Ground One, Petitioner asserts that defense counsel was constitutionally ineffective in failing to challenge an improper grand jury proceeding, failing to request a competency hearing, advising defendant not to testify, failing to subpoena Carmen Santana to testify, failing to challenge the attempted murder instruction, and failing to object to the admission of his statement regarding the location of the gun.

The Sixth Amendment, applicable to states through the Due Process Clause of the Fourteenth Amendment, guarantees the accused the "right . . . to have the Assistance of Counsel for his defense."  U.S. Const. amend. VI.  The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance.  See Strickland v. Washington, 466 U.S. 668, 686 (1984).

A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied.  See Strickland, 466 U.S. at 687.  First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-88.  To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  Id. at 690.  The court must then determine whether, in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance.  Id.

To satisfy the prejudice prong, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  Id. at 695.  As the Supreme Court explained,

27

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

Strickland, 466 U.S. at 695-96.

The Supreme Court instructs that a court need not address both components of an ineffective assistance claim "if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id.

In this case, Petitioner presented his ineffective assistance of counsel claims initially on direct appeal in his pro-se supplemental brief. The Appellate Division did not address the claims on direct appeal, but left them for presentation in a petition for post-conviction relief. Petitioner presented the claims in his petition for post-conviction relief. After hearing Petitioner's testimony, the judge denied relief. Petitioner raised ineffective assistance of counsel claims on appeal, and the Appellate Division affirmed the order denying post-conviction relief.

(1) Was trial counsel constitutionally ineffective in failing to challenge the indictment?

Petitioner argues that counsel was deficient in failing to challenge the indictment:

> The procedural requirements imposed by law were not met during the presentation of this case to the grand jury. The prosecuting

28

> attorney elicited testimony in a vacuum.  The testimony was
> narrowly extracted in an attempt to skew the facts and present one
> narrow explanation of the material evidence.  Defense counsel was
> deficient for not taking issue with the faulty indictment.

(Petitioner's Brief; Docket entry #2, p. 16.)

The Fifth Amendment right to an indictment by a Grand Jury does not apply to State

criminal prosecutions.  See Apprendi v. New Jersey, 530 U.S. 466, 477 n.3 (2000); Albright v.

Oliver, 510 U.S. 266, 272 (1994); Hurtado v. California, 110 U.S. 516 (1884).  Because the Due

Process Clause of the Fourteenth Amendment has not been construed to incorporate the Fifth

Amendment right to indictment by a Grand Jury, id., the legality of an indictment is a matter of

state law, see U. S. Wojtycha v. Hopkins, 517 F.2d 420, 425 (3d Cir. 1975).  Accordingly, "there

is no federal constitutional impediment to dispensing entirely with the grand jury in state

prosecutions."   Beck v. Washington, 369 U.S. 541, 545 (1962); see also Gerstein v. Pugh, 420

U.S. 103, 118-19 (1975) ("the accused is not 'entitled to [federal] judicial oversight or review of

the decision to prosecute").

Nevertheless, counsel could be constitutionally deficient in failing to challenge the

indictment on appropriate state law grounds.  In this case, Petitioner asserts that trial counsel was

constitutionally deficient in failing to challenge the indictment on the grounds that the procedural

requirements imposed by law were not met and the prosecutor elicited testimony which was

"narrowly extracted in an attempt to skew the facts and present one narrow explanation of the

material evidence."  (Docket entry #2, p. 16.)   However, under New Jersey law, prosecutors are

not required to provide the grand jury with evidence on behalf of the suspect, see State v. Hogan,

144 N.J. 216, 235 (1996), and an indictment should be disturbed only on the clearest and plainest

ground, see State v. Womack, 145 N.J. 576, 588 (1996).  A duty to present evidence is triggered

"only in the rare case in which the prosecutor is informed of evidence that both directly negates the guilt of the accused *and* is clearly exculpatory." Hogan, 144 N.J. at 237. "[U]nless the exculpatory evidence at issue squarely refutes an *element* of the crime in question, that evidence is not within the prosecutorial duty . . ." Id.

As Petitioner does not assert that the prosecutor knowingly failed to disclose clearly exculpatory evidence which refutes an element of a crime for which he was indicted, defense counsel could not have been constitutionally deficient in failing to move to dismiss the indictment under New Jersey law.

(2) Was trial counsel constitutionally ineffective in failing to request a competency hearing?

Petitioner argues that defense counsel was deficient in failing to request a competency hearing, insofar as "[d]efense counsel was aware from the factual scenario alone (of defendant's preexisting/present mental defect) that the preponderance of evidence standard could easily be met." (Petitioner's Brief; Docket entry #2, p. 28.)

Petitioner presented this claim on post-conviction relief. After reviewing the four psychological/psychiatric evaluations of Petitioner, the Appellate Division rejected the claim:

> Defendant was . . . admitted to the state forensic psychiatric hospital on November 16, 1998. During his evaluation at the hospital, defendant "denied auditory and visual hallucinations . . . denied any immediate intent[] to hurt himself and others . . . . He also stated that he loves himself too much to hurt himself." Dr. Jackson concluded, "he is ready to defend himself if necessary." Defendant acknowledged "that he has a bad temper . . . ." He was deemed competent to work with counsel in his defense and to stand trial. His diagnosis on discharge for Axis I was "impulse control disorder, NOS;" and for Axis II, "antisocial traits."
>
> With the exception of Dr. Jackson's October 24, 1998 report recommending hospitalization for in-depth evaluation, defendant's

> psychological evaluations do not indicate that defendant was
> incompetent to stand trial, insane or demonstrated diminished
> capacity.  Indeed, the in-depth evaluation conducted after Dr.
> Jackson recommended defendant be hospitalized unequivocally
> states that he was competent to stand trial.  Moreover, nothing in
> the hospital's discharge report even suggests that defendant may
> have been functioning with diminished capacity or insanity at the
> time of the shooting . . . .

State v. Dove, Docket No. A-5552-04T4 slip op., pp. 10-11.

As the Supreme Court recently reiterated in Knowles v. Mirzayance, 129 S. Ct. 1411

(2009), counsel cannot be constitutionally deficient in failing to pursue a defense that had almost

no chance of success:

> [T]he state court's rejection of Mirzayance's ineffective-assistance-
> of-counsel claim [based on failure to present an insanity defense]
> was consistent with Strickland.  The Court of Appeals insisted,
> however, that reasonably effective assistance required here that
> counsel assert the only defense available.  But we are unaware of
> no "prevailing professional norms" that prevent counsel from
> recommending that a plea be withdrawn when it is almost certain
> to lose.  See Strickland, supra, at 688 . . . .  And in this case,
> counsel did not give up the only defense available.  Counsel put on
> a defense to first-degree murder . . . .  The law does not require
> counsel to raise every available nonfrivolous defense.  See Jones v.
> Barnes, 463 U.S. 745, 751 . . . (1983) . . . .  Counsel also is not
> required to have a tactical reason-above and beyond a reasonable
> appraisal of a claim's dismal prospects for success- for
> recommending that a weak claim be dropped altogether.
> Mirzayance has thus failed to demonstrate that his counsel's
> performance was deficient.

Knowles v. Mirzayance, 129 S. Ct. at 1421-22 (citations, internal quotation marks and footnote

omitted).

In this case, as Petitioner's competency claim had almost no chance of success (given that

three experts had evaluated his competency and none found him incompetent), the New Jersey

courts' rejection of the claim that counsel was constitutionally deficient in failing to seek a

competency hearing, was not contrary to, or an unreasonable application of, Strickland and other

Supreme Court precedent governing at the time.

    (3) Was trial counsel constitutionally ineffective in advising Petitioner not to testify?

Petitioner argues that defense counsel was constitutionally deficient in advising him not

to testify.  As factual support, Petitioner argues:

> No one can argue that defendant's [sic] not testifying at trial was
> simply "trial strategy" in an effort to deflect defendant's claim
> herein.  Defendant had no significant prior convictions, was a
> college student, and perhaps the only person who could have
> addressed the issue of intent and relevant mental state at the time
> of the incident.  By not allowing Dove to testify, the
> characterization set forth by El Caribe restaurant patrons was
> misleading and placed before the jury uncontroverted.  Similarly,
> Ana Nunez's identification of Dove and Detective Kenneth
> Puccio's evidence of how Dove told him where the gun was, ruled
> suppressed, was presented without any response from the defense .
> . . .  Furthermore, the fact that the defendant testified at the
> Miranda hearing indicates both his desire and ability to testify at
> that time (irrespective of his diagnosed mental defect) on his own
> behalf, an opportunity that was not afforded him.

(Petitioner's Brief; Docket entry #2, pp. 18-19.)

The record shows that the post-conviction relief judge conducted an evidentiary hearing

and, after hearing Petitioner's testimony, and rejected the ineffective assistance claims, without

hearing the testimony of defense counsel.

The judge found as follows:

> What we have here is an attorney . . . who is the fifth attorney to
> represent Mr. Dove.  Mr. Dove had a very strong conviction, that
> because he had been . . . mistreated by people in the restaurant, and
> had been thrown out of the restaurant, physically [and] had been
> assaulted, was bleeding, was treated badly [which] prompted him
> to come back into the restaurant and fire a weapon.  And the result
> happened . . . .

32

[T]he court has gone through the transcript of the trial . . . there was a [Miranda] motion heard . . . . Then . . . , the trial began in earnest.  Witnesses were called . . . by the State . . . and cross-examined by [trial counsel] . . . for several days . . . . [Trial counsel] spent considerable time cross-examining the witnesses.

The defendant, Mr. Dove, said he actually did a good job, and got some of the witnesses to admit things, that they had misstated . . . . That is, [trial counsel] did a good job at trial . . . .

\*                    \*                    \*

[O]bviously, Counsel cannot be deemed ineffective for failing to raise arguments that are ultimately deemed without merit . . . . Here, while Mr. Dove may have sincerely believed that his mistreatment by people in the restaurant . . . would have given him a reason to come back with a handgun, that's not an argument that an attorney would ordinarily raise.  And all the attorneys - all five of them, obviously, rejected it, and told the defendant that they did so.  And there is no basis for this Court to find that had the defendant's attorney . . . pursued that type of argument, that the result at the trial would have been any different.

State v. Dove, Docket No. A-5552-04T4 slip op., pp. 6-7 (quoting the Law Division).

In affirming the order denying post-conviction relief, the Appellate Division observed:

[Defendant] testified [at the PCR hearing] that he had "a falling out" with each prior counsel because each one wanted him to plead guilty and he wanted to go to trial . . . .  Defendant acknowledged that all of his prior counsel "weren't trying to convince [him] to take the plea because they were lazy, they were trying to convince [him] to take the plea because they thought it was better for [him]." Defendant testified, however, that he "wanted to go to trial, because I just wanted to get out of prison.  That was what I set my mind on.  I missed my Mom[], my family, and stuff."

\*                    \*                    \*

Defendant testified at the PCR hearing that trial counsel was incompetent because he did not investigate "the people in the restaurant."  Defendant claimed that he, rather than the people in the restaurant, was the victim because "they jumped me in the restaurant . . . .  I was thrown out of the restaurant.  I was thrown

33

out of the restaurant, bleeding from my head.  I was bleeding from my head.  I was thrown out from the restaurant."  He testified that was the reason he came back with the gun and fired the shots.

*                *                *

Defendant's own testimony was at odds with his claim that trial counsel's performance was incompetent.  Defendant's principal complaint was that trial counsel - indeed, all five trial counsel who represented him - disagreed with his approach to the case.  But defendant conceded that trial counsel did a good job representing him . . . .

State v. Dove, Docket No. A-5552-04T4 slip op., pp. 4, 5-6, 8.

Petitioner's testimony at the PCR hearing indicates that, if he had gone against the advice of counsel and testified at trial, he would have testified that he was justified in returning to the restaurant with a handgun after the owners and patrons had physically thrown him out of the restaurant, causing him to bleed.  As the New Jersey courts recognized, this testimony would have harmed Petitioner's case.  Counsel was obviously not deficient in advising Petitioner not to testify under these circumstances.

Under Supreme Court precedent, counsel cannot be deemed ineffective in advising a defendant not to present harmful testimony.  Accordingly, the New Jersey courts' adjudication of this claim was not contrary to, or an unreasonable application of, Strickland and its progeny.

(4) Was trial counsel constitutionally ineffective in failing to object to the admission of Petitioner's statement offering to show police the location of the gun?

This Court has ruled that the admission of Petitioner's statement offering to show police the location of the gun was not inadmissible under federal law.  Accordingly, counsel cannot be deemed ineffective in failing to object to the admission of this testimony.

      (5) Was trial counsel constitutionally ineffective in failing to challenge the attempted murder instruction?

      Petitioner argues that counsel was deficient in failing to object to the giving of an attempted murder instruction, because "[t]he proofs adduced at trial did not support the attempted murder instruction."  (Petitioner's Brief; Docket entry #2, p. 29.)  Presumably, Petitioner contends that the attempted murder instruction was not warranted because the evidence did not establish that Petitioner intended to kill Ramon Jimenez and Domingo Marmalejo when he returned to the restaurant with a handgun (one-half hour after he had been physically thrown out of the restaurant), "fired seven shots around the restaurant, which at the time contained several patrons in addition to the owners[, and] pointed the gun at a patron who had failed to retreat to the back of the restaurant with the other patrons and owners and pulled the trigger several times, although the gun failed to fire."  State v. Dove, Docket No. A-355-99T4 slip op., pp. 5-6.  However, New Jersey courts have consistently held that a defendant may be convicted of first degree murder without having the intent to cause death, so long as the defendant purposely or knowingly inflicted serious bodily injury resulting in death.  See State v. Cruz, 163 N.J. 403, 409-418 (2000).

      The aforesaid evidence is sufficient to support that Petitioner knowingly inflicted serious bodily injury that could have resulted in death.  Counsel was not constitutionally deficient in failing to object to the giving of an attempted murder instruction and the New Jersey courts' rejection of this ineffective assistance claim was not contrary to, or an unreasonable application of, Strickland and its progeny.

(6) Was trial counsel constitutionally ineffective in failing to subpoena Carmen Santana?

Petitioner argues that counsel was deficient in failing to ensure the appearance of Carmen Santana, a patron who was in the restaurant on the evening of the shooting and would have testified that Domingo Marmalejo, one of the alleged victims, was in a locked back room at the time of the shooting.  However, as the Government notes, while Petitioner's post-conviction relief counsel presented this claim, PCR counsel admitted that he did not know where Carmen Santana was or how she could be reached.  (Answer at p. 7-8.)  Under these circumstances, Petitioner could not establish what Santana would have testified or that counsel was deficient in failing to call her as a witness.

Because Petitioner did not show either deficient performance or prejudice in failing to call Santana, the New Jersey courts' rejection of this claim was not contrary to, or an unreasonable application of, Strickland and its progeny.

F.  Certificate of Appealability

This Court shall not issue a certificate of appealability because Petitioner has not made "a substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2).  See Miller-El v. Cockrell, 537 U.S. 322 (2003).

## IV.  CONCLUSION

Based on the foregoing, this Court dismisses the Petition seeking the issuance of a writ of habeas corpus, and denies a certificate of appealability.

  S/Joseph A. Greenaway, Jr.

JOSEPH A. GREENAWAY, JR., U.S.D.J.

Dated:  January 20, 2010